IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VIRLACE LEE HUNT, Individually and as
Natural Grandmother and Adoptive Mother and
next friend of, E.M., L.M. and S.M.,
minors,

        Plaintiffs,

vs.                                                                                                 No. CIV 03-0585 JB/LFG

VIRGINIA K. GREEN, individually, and
R. MICHAEL WESTBAY, individually,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendants' Motion to Partially Exclude Therapist's Expert Opinions Regarding Plaintiffs' Emotional Distress and Testing Related Thereto, filed March 19, 2004 (Doc. 68). The Court held a hearing on this motion on June 24, 2004. The primary issue is whether the Court should exclude portions of the Plaintiffs' expert Solveig Maerki's opinions relating to the validity of testing that the Defendants' expert conducted. Because the Court finds that Maerki's challenged opinions -- as represented by her testimony before the Court at the hearing on May 18, 2004, and by counsel for the Plaintiffs at the hearing on this motion -- do not violate the restrictions of Federal Rule of Evidence 702, the Court will deny the motion without prejudice to the Defendants raising objections to this testimony at trial.

**FACTUAL BACKGROUND**

This case involves the removal of the three grandchildren – Plaintiffs E.M., L.M., and S.M.– from the physical custody of their grandmother, Plaintiff Virlace Hunt, in May 2000. At all material

times, E.M., L.M., and S.M. were in the legal custody of the Children Youth and Families Department ("CYFD"). At the time of the removal, the children were in Hunt's physical custody. Hunt was the foster parent. The Defendants are social workers whom the Plaintiffs allege to be responsible for effectuating the removal. The Defendants seek to exclude certain of Maerki's opinions regarding testing that Defendants' expert, Diane Thompson, conducted.[1]

The Plaintiffs retained Maerki to provide testimony regarding "how [the children] were functioning when they commenced therapy with [her] and compare that to how they were functioning after they were removed . . . ." Deposition of Solveig Maerki at 33:24-25; 34:4-11 (taken February 20, 2004). Her testimony is based on clinical notes, progress notes, and treatment and case notes from other providers. See id. at 34:11-13, 24-25; id. at 35:1-2. The Plaintiffs state that Maerki's opinions concerning the testing Thompson conducted were based on her own actual personal observations during the testing procedures by Thompson. See Transcript of Hearing at 11:23-25.

The Plaintiffs retained Maerki as an expert because she was in a unique position. She had been the therapist for E.M. and L.M. before their removal from their grandmother in May 2000. See id. at 34: 14-18. She also had family therapy sessions which included Virlace Hunt. She had treated the Plaintiffs in approximately 118 therapy sessions over a period of more than 1½ years, from October 1998 to May 2000, which included 44 individual therapy sessions with E.M., 50 individual

---

[1] The parties agree that Defendants' other objections to Maerki's opinions are moot given the Court's ruling partially granting the Defendants' Motion for Summary Judgment, which limited the scope of this case. See Transcript of Hearing at 4:18 - 5:6 (June 24, 2004)(both parties and the Court agreeing that the only remaining issue is Maerki's ability to testify regarding Thompson's testing); Memorandum Opinion and Order, filed June 24, 2004 (Doc. 110)(granting in part and denying in part the Defendants' Motion for Summary Judgment, filed March 26, 2004 (Doc. 75)).
   The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

therapy sessions with L.M. and 19 family therapy sessions with E.M. and L.M., and Virlace Hunt. See Summary of Maerki visits with Hunt, E.M. and L.M. (November 12, 2003). Maerki, however, did not see either child during the time that they were removed from Hunt's care. See Maerki Depo. At 35:3-5. At the time she prepared her report in November 2003, Maerki had not seen the children since June 2000. See id. at 33:7-15. She has since see E.M. and L.M. in 2004. See id. at 67:21-24, 70:2-3.

Maerki was, and is, in a unique position to compare the mental and emotional state of E.M., and L.M. before their removal from their grandmother, with their metal and emotional state after their removal. Maerki was present and personally observed Thompson's evaluation of both E.M. and Hunt. See Maerki Depo. at 22:5-12. During her deposition, upon the Defendants' questioning, Maerki stated that, from her observations, she had concerns about the validity of Thompson's test because (1) the interview was short; (2) because of the vocabulary used; and (3) because of E.M.'s overall comfort level – it was cold, she was expected to stay for over three hours, and the testing which had been scheduled a few days earlier had to be canceled because E.M. had a stomach ache and threw up. See id. at 23:4-7, 19-21; id. at 25:5-15. Maerki elaborated about her concerns about the brevity of the sessions by stating that the length "added some superficiality to the answers" and that E.M. "cooperated, but minimally, in my view." Id. at 23:22 to 24:5. Maerki stated that "the session, especially the first interview, was really rushed" and "the vocabulary used was too grown up." Id. at 24:13-16. Maerki further stated that "the way [E.M.] was feeling and the shortness of the sessions might have influenced the reliability of the results," specifically because "[E.M.] gave very brief answers. She gave acceptable answers. Her cooperation level was not optimal." Id. at 26:24 to 27:7.

Thompson verified many of Maerki's personal observations in her own deposition. Thompson reported that E.M. was "reticent," Deposition of Diane Thompson at 38:15-18 (taken February 11, 2004); "a little guarded," id. at 38:20-21; "she didn't volunteer much information, but responded to direct questions. . .," id. at 39:13-16. Thompson incorporated these same observations into her report. She also testified that the testing took place over a period of only three hours and that she had not seen E.M. before or since. See id. at 30:1-21.

Defendants challenge Maerki's qualifications to administer the testing that Thompson administered. Maerki does not have a Ph.D., but has three years toward her Ph.D. See Maerki Depo. at 5:11-17. She is not currently working on her Ph.D. See id. Maerki has a Masters Degree in Applied Psychology. See Maerki Resume.

The Plaintiffs admit that Maerki is not licensed in New Mexico to conduct the exams or evaluations that Thompson conducted, but contend that this lack of a license does not mean that she has not conducted extensive psychological testing. The Plaintiffs point out that Maerki has extensive training in Finland, and is qualified to administer psychological testing there. See Maerki Depo. 123:1-8. She is a psychometrician and has special training in giving psychological tests to children, including IQ tests and personality tests. See id. at 28:23 to 29:5. She is a Licensed Clinical Mental Health Counselor which requires a master's degree in a clinical field such a psychology or counseling, and Maerki holds the highest of the different levels of certification in her field. See id. at 4: 21-22; 4:23 to 5:10. Maerki has also been accepted as an expert witness in a number of Children's Court cases. See Letter from Maerki to Jeff Romero (November 17, 2003).

The Defendants retained Thompson to conduct an Independent Psychological Evaluation ("IPE") of Hunt and the eldest grandchild, E.M. See Thompson's IPE (January 19, 2004).

-4-

Thompson is a Ph.D. and is a licensed clinical psychologist and a licensed school counselor. See id. at 8.

Maerki opines that Thompson's report is overall a good report. See Maerki Depo. at 22:13-25; 23: 1-21. Her specific concerns were with Thompson's interview, with the test, and with Thompson's conclusion that E.M.'s Post Traumatic Stress Disorder ("PTSD") was in remission. See id. at 25:22-24. Maerki believes the way E.M. was feeling and the length of the sessions might have influenced the reliability of Thompson's IPE results, specifically the major diagnosis of "PTSD in remission." Id. at 26:24 - 27:7. Further, Maerki states that "the test results are accurate to a large extent, may be totally accurate for the child's state of mind or the child's state of emotion that specific morning and afternoon, or actually afternoon." Id. at 126:6-16. Maerki's concerns about the testing Thompson conducted are that, even though the tests given by Thompson measure "manifest anxiety," they do not measure "latent anxiety." Id. at 30:4-15. "Latent anxiety" is anxiety that is typical of PTSD and needs a "trigger" to be released. Id. at 30:16-20. If the trigger is not there, latent anxiety might not be observed or measured. See id. at 30:19-20.

Thompson does not contradict the assertion that the testing shows a state of mind or emotion at a specific point in time. When asked what her testimony would be at trial, Thompson stated: "Well, my testimony would be that at the time of this evaluation, that both Mrs. Hunt and [E.M.] were--were doing quite well, were functioning psychologically adequately, and did not appear to be in any acute distress." Thompson Depo. at 136:9-18.

The Defendants seek to exclude any testimony from Maerki concerning the validity or results of any tests Thompson conducted in this matter.

## ANALYSIS

This motion is not about whose expert is better qualified, nor do the Defendants contend that such a challenge would suffice to exclude Maerki's opinions altogether. For purposes of this motion, the Defendants and the Court assume that Maerki's education and experience would ordinarily qualify her to provide expert testimony on a variety of subjects. It is with her methodology and experience in psychological testing that the Defendants take issue in this motion.

> Rule 702 states:
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (as amended in response to Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993)). The Advisory Committee Notes to this rule clarify the types of opinions that are admissible pursuant to the rule's constraints:

> When a trial court, applying this amendment, rules that an expert's testimony is reliable, this does not necessarily mean that contradictory expert testimony is unreliable. The amendment is broad enough to permit testimony that is the product of competing principles or methods in the same field of expertise. . . . As the court stated in In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 744 (3d Cir. 1994), proponents "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable. . . . The evidentiary requirement of reliability is lower than the merits standard of correctness."

Fed. R. Evid. 702, Advisory Committee Notes.

The Defendants do not challenge Maerki's qualifications as an expert to testify in this case. Rather, the Defendants assert that Maerki's qualifications do not allow her to offer certain opinions

which challenge the testing that Thompson conducted. The Defendants contend that Maerki's methodology in determining that Thompson's conclusions are questionable is unreliable because Maerki herself could not have performed Thompson's testing.

Rule 703 provides constraints as to what materials an expert may rely on in forming her opinions:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Fed. R. Evid. 703. Again, the Advisory Committee Notes clarify the rule's constraints:

> The third source [of an expert's opinions] contemplated by the rule consists of presentation of data to the expert outside of court and other than by his own perception. In this respect the rule is designed to broaden the basis for expert opinions beyond that current in many jurisdictions and to bring the judicial practice into line with the practice of the experts themselves when not in court. Thus a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays.

Fed. R. Evid. 703, Advisory Committee Notes. Thus, it is appropriate under these rules for an expert to rely on sources of information such as testing others have conducted.

Based on the Plaintiffs' counsel's representations at the hearing on this motion, Maerki does not conclude that Thompson's testing is inherently flawed or unreliable. See Transcript of Hearing at 10:4 - 12:6. Maerki disagrees with the conclusions Thompson reached based on the testing Thompson conducted. As noted earlier, the Defendants do not contend that Maerki is unqualified as an expert; rather, they contend that she is unqualified to question their expert's conclusions. The Court disagrees. Maerki, as an undisputedly qualified expert, is entitled to rely on testing conducted

by other experts and to contradict other experts' conclusions based on that testing. To the extent that Maerki herself could not conduct those same tests because she is not appropriately licensed in New Mexico, the Court believes that is appropriate grounds for cross examination or impeachment rather than for excluding Maerki's opinions. The Court will, therefore, deny the motion without prejudice to the Defendants raising objections at trial if Maerki's testimony exceeds the scope of the opinions presented and reported to the Court at the hearing on this motion.

**IT IS ORDERED** that the Defendants' Motion to Partially Exclude Therapist's Expert Opinions Regarding Plaintiffs' Emotional Distress and Testing Related Thereto is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Jeff Romero
Albuquerque, New Mexico

    *Attorney for the Plaintiffs*

Elizabeth L. German
Daniel J. Macke
Brown & German
Albuquerque, New Mexico

    *Attorneys for the Defendants*