## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

VIRLACE LEE HUNT, Individually and as
Natural Grandmother and Adoptive Mother and
next friend of E.M., L.M., and S.M., minors

       Plaintiffs,

vs.                                                                                        No. CIV 03-0585  JB/LFG

VIRGINIA K. GREEN, individually, and
R. MICHAEL WESTBAY,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendants' Motion to Reconsider Denial of

Summary Judgment on Plaintiff's Fourth Amendment Claims and Memorandum in Support thereof,

filed September 28, 2004 (Docs. 117 & 118).  The Court held a hearing on this matter on November

8, 2004.  The Court previously granted in part and denied in part the Defendants' Motion for

Summary Judgment, filed March 26, 2004 (Doc. 75), granting summary judgment on the procedural

due process and substantive due process claims, but denying summary judgment on the Fourth

Amendment claim.  <u>See</u> Order, filed June 3, 2004 (Doc. 108); Memorandum Opinion and Order, filed

June 24, 2004 (Doc. 110).  Consistent with the Court's ruling at the hearing on this motion, and for

the reasons given at the time of the hearing, the Court will grant the Defendants' motion in part and

dismiss the Fourth Amendment claim.

## <u>FACTUAL BACKGROUND</u>

Plaintiff, Virlace Hunt, is the maternal grandmother of Plaintiffs E.M., L.M., and S.M.,

minors.  <u>See</u> Complaint--Civil Rights ¶ 4, at 1-2, filed May 15, 2003 (Doc. 1)(hereinafter,

"Complaint").  At all material times, Defendant Virginia Green was  a social worker for the Children,

Youth and Families Department of the State of New Mexico ("CYFD").  See id. ¶ 6, at 2.  At all

material times, Green acted as the treatment social worker for E.M., L.M., and S.M.  See Vol. I

Deposition of Virlace Hunt 77:22 - 78:3 (taken February 16, 2004)(hereinafter, "Hunt Depo.").

Green was the treatment social worker for the minor children from approximately July 1999 until

September 2000.  See Vol. I Deposition of Virginia Green at 67:13-20 (taken February 17,

2004)(hereinafter, "Vol. I Green Depo.").  At all times material to this lawsuit, Green was a licensed

independent social worker in the State of New Mexico, was a licensed drug and alcohol counselor,

and was a licensed psychotherapist.  See id. at 178:10 - 179:6.

CYFD assigned other treatment social workers to the case both before and after the

Defendants' service on this case.  At all material times, CYFD employed Defendant Michael Westbay

as a Social Worker Supervisor, and he was Green's supervisor.  See Complaint ¶ 7, at 2.  Westbay

possesses a Masters degree in Social Work from Columbia University, and, at all material times, was

a licensed independent social worker in the State of New Mexico.  See Defendants' Answer to

Interrogatory No. 4 (hereinafter, "Answer"); Deposition of Michael Westbay at 24:25 - 25:3 (taken

February 23, 2000).

On August 5, 1998, CYFD filed a Neglect/Abuse Petition asking the state court, Second

Judicial District, Children's Court Division ("Children's Court"), among other things, to place E.M.

and L.M. in CYFD's legal custody.  See Neglect/Abuse Petition at 2 (No. JG-98 0077, 2d Judicial

Dist., County of Bernalillo, State of New Mexico)(dated August 5, 1998).  That same day, the

Children's Court issued an Ex Parte Custody Order, commanding CYFD to take custody of E.M. and

L.M.  See Ex Parte Custody Order at 1 (No. JG-98 0077, 2d Judicial Dist., County of Bernalillo,

State of New Mexico)(dated August 5, 1998). Also on August 5, 1998, the Children's Court issued an order directing that a guardian ad litem be appointed to represent the children. <u>See</u> Order ¶ 3, at 1 (No. JG-98 0077, 2d Judicial Dist., County of Bernalillo, State of New Mexico)(dated August 5, 1998).

That same day, the Children's Court issued a Notice of Custody Hearing to be held on August 13, 1998. <u>See</u> Notice of Custody Hearing at 1 (No. JG-98 0077, 2d Judicial Dist., County of Bernalillo, State of New Mexico)(dated August 5, 1998). E.M. and L.M.'s biological parents were provided a Notice of Custody advising them that CYFD had taken the children into custody. <u>See</u> Notice of Custody at 1 (No. JG-98 0077, 2d Judicial Dist., County of Bernalillo, State of New Mexico)(dated August 5, 1998); Summons and Return of Service issued to Eli Montour (No. JG-98 0077, 2d Judicial Dist., County of Bernalillo, State of New Mexico)(No. JG-98 0077, 2d Judicial Dist., County of Bernalillo, State of New Mexico)(dated August 12, 1998); Summons and Return of Service issued to Angel Montour (No. JG-98 0077, 2d Judicial Dist., County of Bernalillo, State of New Mexico)(dated August 12, 1998).

On August 13, 1998, Christen Conley entered her appearance as guardian ad litem for E.M. and L.M. <u>See</u> Entry of Appearance at 1 (No. JG-98 0077, 2d Judicial Dist., County of Bernalillo, State of New Mexico)(dated August 13, 1998). The Children's Court conducted a custody hearing on August 13, 1998. <u>See</u> Custody Hearing Order at 1 (No. JG-98 0077, 2d Judicial Dist., County of Bernalillo, State of New Mexico)(dated August 17, 1998). On August 17, 1998, the Children's Court issued a Custody Hearing Order, providing that "Legal custody of the child(ren) shall be: X With CYFD with visitation by respondents . . . ." <u>Id.</u> ¶ 2, at 3.

On July 30, 1999, the Children's Court issued a Judgment and Order of Termination of

Parental Rights, terminating Eli Montour's and Angel Montour's parental rights.  See Judgment and Order of Termination of Parental Rights ¶ 1, at 4 (No. JG-98 0077, 2d Judicial Dist., County of Bernalillo, State of New Mexico)(dated July 30, 1999).  The Order further states that CYFD would retain legal custody of the children until the state court ordered otherwise or the children were adopted.  See id. ¶ 2, at 5.  According to the Defendants, there was no further court order changing the children's legal custody until the state court allowed Hunt to adopt them on August 27, 2002.

Thus, at all times material hereto, including on May 25, 2000, E.M. and L.M. were in CYFD's legal custody.  See Complaint ¶¶ 10-12, at 3.  The Plaintiffs have not disputed this fact and, indeed, specifically pled this fact in the Complaint.  See Complaint ¶ 9, at 2-3.  It is undisputed that, at all material times before the change in placement, Hunt had "physical custody" of E.M., L.M., and S.M. See Complaint ¶¶ 9, 11, at 2-3; Answer ¶¶ 9, 11, at 2 (admitting the Complaint's allegations in paragraphs 9 and 11).

At all material times, the Honorable Geraldine Rivera, District Judge, Division XXII, State of New Mexico, presided over the abuse and neglect proceedings concerning E.M.'s, L.M.'s, and S.M.'s parents.  See Vol. I Hunt Depo. at 185:24-186:4.  There were three Children's Court hearings: January 18, 2000, May 11, 2000, and July 24, 2000.

On January 18, 2000, the Children's Court conducted a judicial review hearing on E.M.'s and L.M.'s status.  At the January 18 hearing, Green recommended continued placement with Hunt and stated that she would continue to support Hunt.  See Transcript of Children's Court hearing at 3 (January 18, 2000).  At that hearing, Conley "cautiously" agreed with CYFD's decision not to remove the children, but stated she was "horrified" that the daughter and grandson were involved in

the shoplifting incident.[1]  See id. at 8-10.  Judge Rivera expressed "concerns" about what the children were being exposed to.  See id. at 3-6.

On May 11, 2000, the Children's Court conducted a judicial review hearing on the status of S.M., the sister of E.M. and L.M.  See Transcript of Children's Court hearing (May 11, 2000).  The hearing did not, however, involve the other two children E.M. or L.M.  See id. (caption reads: "State of New Mexico, ex rel Children Youth and Families Department In the Matter of [S.L.], Child, and Concerning Angel M. Hunt and Eli Montour, Respondents.").  Judge Rivera stated that she wanted S.M. removed immediately, and that she wanted CYFD to investigate moving L.M. and E.M. because she did not believe Hunt's residence was an appropriate place for the children to remain:

> THE COURT:  . . . . I don't think that the Department needs to waste any more time and I'm directing the Department to do a change of plan immediately and, you know, I'm not comfortable, I'm really not comfortable with the kids there.  What I'm afraid of is that Ms. Hunt is, you know, providing a holding pattern for a mother and father who have already been determined to be unfit.  I would like for the Department to investigate a change.  I'm not sure that I agree with the therapist and to see if we can get these kids placed, all three in one place, because it's not going to get any easier, if that's what she's worried about.
>
> *  *  *  *
>
> THE COURT:  But I'll tell you, based on what I have heard here today, I don't think Ms. Hunt is an appropriate place for them.

---

[1] In October 1999, Hunt was cited for shoplifting and cruelty to children.  See Vol. I Hunt Depo. at 192:15-193:3; Vol. II Deposition of Virlace Hunt at 53:13-14 (taken February 24, 2004); Incident Report, dated October 1, 1999.  Although charged, she was never convicted of child abuse or endangerment.  See Vol. II Hunt Depo. at 53:22-23.  Ginger Robinson (Hunt's daughter), L.M., Hunt's eight-year old grandson Thomas, and S.M. accompanied Hunt into the store.  See Vol. I Hunt Depo. at 179:13-24; id. at 194; 5-17; N.M. Child Abuse & Neglect Citizen Review Board Recommendation, dated May 1, 2000; Incident Report, dated October 1, 1999.  Robinson and the children went in a different direction in the store than did Hunt.  At the time of the alleged shoplifting, the children were with Robinson in a different part of the store and did not observe any alleged shoplifting.  See Vol. II Hunt Depo. at 51:22-53:9.  Hunt's grandson, Thomas, pushed the cart out the store's door.  See id. at 52:21-24.

* * * *

THE COURT:   Okay, it's time to move [S.L.] at a minimum, and I want the Department to investigate moving the girls.

MS. GREEN:  [inaudible]

THE COURT:  If you can, fine.  I want [S.L.] moved now, okay?

Id. at 9:1 - 11:12.  Judge Rivera directed that she did not want an "emergency" move, but rather a ten-day move.  See id. at 11:11-16.  Section 32A-4-14(A), NMSA, requires ten-days advance notice be given foster parents of changes in placement unless there is an "emergency" situation.  Green and Westbay, however, did not believe that Judge Rivera ordered E.M.'s and L.M.'s removal.  See Vol. I Green Depo. at 151:11-21; id. at 281:25 - 282:5.; Westbay Depo. at 79:9-13.  Conley also did not believe that Judge Rivera had ordered E.M.'s and L.M.'s removal, but thought she had ordered CYFD to explore or investigate whether it should also remove the two older children.  See Vol. II Conley Depo. at 59:9 - 61:12; id. at 107:1-20; id. at 129:11-25.

After the hearing, Green and Westbay, along with the County Operating Manager and Conley, made the decision to remove L.M. and E.M. at the same time they removed S.M.  See Vol. II Green Depo. at 274:14 - 275:16; Vol. II Conley Depo. at 129:11-25.  Conley agreed with removing all three children at once.  See Vol. II Conley Depo. at 59:9 - 61:12.  Keeping all three children together was consistent with CYFD policy.  See Vol. II Green Depo. at 274:12 - 275:16.

On May 25, 2000, Green removed the children from day care and placed them with the Tripp family.  See Vol I Green Depo. at 155:19 - 156:5.  When she picked them up, Green did not tell the children they were free to leave.  See id. at 157:13-23.  Instead, she told them that the place they were going was safe and that there were other children and animals.  See id. at 157:13-23.  The

children were not allowed to visit with their grandmother until June 15, 2000, three weeks later.  See id. at 157:24 - 158:5.  In her deposition, Green elaborated:

> A.  My clients, again, were the girls, and -- and their well-being, and I felt sorry for Virlace, but my clients were the girls, and it didn't -- under the circumstance, it didn't make a lot of sense to me to -- to give the girls false hopes that they were going home, and that it seemed like under the circumstance, the best thing was to help them adjust to what was happening.

Id. at 159:16-22.

On July 24, 2000 -- almost two months after removal -- the Children's Court conducted another judicial review hearing in the case involving E.M. and L.M.  See Judicial Review Order at 1 (dated July 28, 2000).  In the Order prepared based on this hearing, the Children's Court states that CYFD "has made a reasonable effort to implement the treatment plan previously ordered by the Court, and has not abused it's discretion in placement."  Id. ¶ 2, at 1.  The Order further states that it adopts the "Judicial Review Report" as factual findings.  Id. ¶ 3, at 1.  In the Judicial Review Report, CYFD states that E.M., L.M. and S.L. "recently moved from their maternal grandmother's home to a treatment foster home."  Judicial Review Report/Reassessment at 2 (dated July 10, 2000).

The minors' guardian ad litem did not challenge that judgment in the Children's Court, although there exists a specific avenue for doing so.  See NMSA 1978 § 32A-4-14.  Moreover, the guardian ad litem, foster parent (Hunt), or other interested party did not file a motion seeking to stay the change of placement, or after it had occurred, to reverse it.

## PROCEDURAL BACKGROUND

On March 26, 2004, the Defendants filed a Motion for Summary Judgment based in part on the Plaintiffs' Fourth Amendment Claims against the Defendants.  The Court conducted a hearing on the Motion for Summary Judgment on May 18, 2004.  On June 3, 2004, the Court issued an Order,

that included a denial of summary judgment as to E.M.'s and L.M.'s Fourth Amendment claims.  In a footnote, the Court promised to issue an opinion at a later date more fully detailing the reasons for its ruling.

On June 24, 2004, the Court issued its Memorandum Opinion more fully detailing its rationale for its June 3, 2003 decision.  See Doc. 110.  The Court ruled: "The Court's concern is whether, in light of the clearly established law and the information that the social workers possessed, an objectively reasonable  social worker in the Defendants' shoes would have been on notice that removing the two older children without a court order would violate their Fourth Amendment rights to be free from unreasonable search and seizure."  Memorandum Opinion and Order at 18.

The Defendants filed their Motion to Reconsider on September 28, 2004, over three months after the Court determined the issue of the Defendants' qualified immunity relating to E.M.'s and L.M.'s Fourth Amendment claims.  The Defendants request that the Court reconsider its prior denial of the Defendants' Motion for Summary Judgment on the Plaintiffs' Fourth Amendment claims and to grant summary judgment in the Defendants' favor on these claims.

## STANDARDS FOR DECIDING A MOTION TO RECONSIDER

The Federal Rules of Civil Procedure do not expressly recognize a motion for reconsideration. See Computerized Thermal Imaging, Inc. v. Bloomfield, L.P., 312 F.3d 1292, 1296 n.3 (10th Cir. 2002).  If the court has entered a final order or judgment, then a motion for reconsideration is considered a motion to alter or amend the judgment under rule 59(e) if it is filed within ten days after the entry of judgment.  See id. at 1296.  If the motion for reconsideration is filed more than ten days after the entry of final judgment, it is considered a motion for relief from judgment under rule 60(b). See id.

Rule 59(e) and 60(b), however, apply only to final judgments, see Raytheon Constructors Inc.
v. Asarco Inc., 368 F.3d 1214, 1217 (10th Cir. 2003); Anderson v. Deere & Co., 852 F.2d 1244,
1246 (10th Cir. 1988), and an order denying summary judgment is generally not a final order, see
Bass v. Richards, 308 F.3d 1081, 1086 (10th Cir. 2002).  "Finality is judged by the standards
applicable to determining [appellate] jurisdiction under 28 U.S.C. § 1291."  Wheeler Mach. Co. v.
Mountain States Mineral Ent., Inc., 696 F.2d 787, 789 (10th Cir. 1993)(per curiam).  See 28 U.S.C.
§ 1291 (2004)(providing that "[t]he courts of appeals . . . shall have jurisdiction of appeals from all
final decisions of the district courts of the United States . . . except where a direct review may be had
in the Supreme Court").  A court's decision that does not adjudicate all the claims and rights and
liabilities of all the parties is generally not considered a final judgment; rather, such a judgment is
generally considered interlocutory and is subject to revision at any time.  See Raytheon Constructors
Inc. v. Asarco Inc., 368 F.3d at 1217; Wagoner v. Wagoner, 938 F.2d 1120, 1122 n.1 (10th Cir.
1991)(explaining that a motion for reconsideration on a court's decision denying a motion for partial
summary judgment "was nothing more than an interlocutory motion invoking the district court's
general discretionary authority to review and revise interlocutory rulings prior to entry of final
judgment"); Fed. R. Civ. P. 54(b)("[A]ny order . . . however designated, which adjudicates fewer
than all the claims or the rights and liabilities of fewer than all the parties . . . is subject to revision at
any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all
the parties.").

An exception exists, however, if a court denies summary judgment because of "purely legal
challenges to the denial" of qualified immunity.  Bass v. Richards, 308 F.3d at 1086.  "When the
defendants are public officials asserting a qualified immunity defense and the appealed issue is

whether a given set of facts establishes that defendants violated clearly established law," the order

denying summary judgment is final and the appellate court has jurisdiction under 28 U.S.C. § 1291.

Id.  See  Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)("[A] district court's denial of a claim of

qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision'

within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment.").  If,

however, the court denied qualified immunity based on a purely factual question, then appellate courts

lack jurisdiction.  See  Johnson v. Jones, 515 U.S. 304, 319-20 (1995)(holding that a defendant

asserting a qualified immunity defense "may not appeal a district court's summary judgment order

insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact

for trial"); Mick v. Brewer, 76 F.3d 1127, 1133 (10th Cir. 1996).

The Court may alter or amend an interlocutory order at any time before the filing of the final

judgment.  See Raytheon Constructors Inc. v. Asarco Inc., 368 F.3d at 1217.  This approach is in

accord with other Judges' opinions from this District.  See Shannon v. United States, No. CIV 02-

717, at 3-4 (D.N.M. August 11, 2004)(Black, J.)(holding prior order was interlocutory and subject

to change at any time because all claims not yet litigated); Organ Water & Sewer Assoc. v. Moongate

Water Co., No. CIV 01-883, at 2 (D.N.M. May 25, 2004)(Brack, J.)(holding that a denial of a

motion for partial summary judgment is interlocutory and subject to revision at discretion of the

Court); Ambrose v. White, Civ. No. 01-1263, at 3 (D.N.M. November 13, 2002)(Parker, J.)(stating

that the Court "may use its plenary power to review interlocutory orders if justice so requires");

Castillo v. City of Albuquerque, CIV 01-369, at 2 (D.N.M. July 11, 2002)(Johnson, J.)(finding that

Rule 59(e) and Rule 60(b) does not apply to a denial of summary judgment, and, after considering

the motion on the merits, declining to reconsider the court's earlier ruling); Clawson v. S.W.

Cardiology Assoc., P.A., No. CIV 99-379, at 3-4 (D.N.M. June 21, 2000)(Vasquez, J.)(finding that

"[d]istrict courts have a general discretionary authority to reconsider a[n] interlocutory decision");

Miller v. County of Santa Fe, Civ. No. 97-309, at 2-3 (D.N.M. August 27, 1998)(Hansen,

J.)(declining to exercise the court's "independent discretion to change what it is in effect an

interlocutory order").  But see Britton v. Long Term Disability Ins. Plan of the Lovelace Institutes,

No. CIV 99-768, at 4 (D.N.M. September 5, 2001)(Vasquez, J.)(construing a motion to reconsider

a denial of summary judgment as a motion for relief from judgment under Rule 60(b)).

## ROOKER-FELDMAN DOCTRINE

The Rooker-Feldman doctrine takes its name from the seminal decisions in D.C. Court of

Appeals v. Feldman, 460 U.S. 462 (1983), and Rooker v. Fid. Trust Co., 263 U.S. 413 (1923).  The

doctrine precludes a party who has lost a case in state court "from seeking what in substance would

be appellate review" in federal district court.  Kenmen Eng'g v. City of Union, 314 F.3d 468, 473

(10th Cir. 2002)(quotations omitted).  "This prohibition extends to all state-court decisions – final

or otherwise," id. at 475, and covers not only claims that the state court actually decided, but also

issues inextricably intertwined with such claims, see id.  Further, "it is not necessary that the federal

court action formally seek to invalidate the state judgment; it is enough if the federal action would

in substance defeat or negate a state judgment, for example, if the federal claim succeeds only to the

extent that the state court wrongly decided the issue before it."  Mandel v. Town of Orleans, 326

F.2d 267, 271 (1st Cir. 2003)(barring federal action attacking state custody decision on ground that

presiding judge violated law); Ballinger v. Culotta, 322 F.2d 546, 549 (8th Cir. 2003)(holding

doctrine barred federal claim asserting child abuse to undermine state custody order).  An

unsuccessful state litigant cannot challenge an adverse state judgment and circumvent the rule of

Rooker-Feldman simply "'by bringing a constitutional claim under [the civil rights statutes].'" Facio v. Jones, 929 F.2d 541, 544 (10th Cir. 1991)(quoting Anderson v. Colorado, 793 F.2d 262, 263 (10th Cir. 1986)).

## LAW ON QUALIFIED IMMUNITY

The Court's June 24, 2004, Memorandum Opinion and Order on pages 17 and 18 discusses the standard for qualified immunity.  "Qualified immunity is intended to shield public officials from the burdens of trial." Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 645 (10th Cir. 1988).

In Roska v. Peterson, 328 F.3d 1230 (10th Cir. 2003), the United States Court of Appeals for the Tenth Circuit, after discussing qualified immunity in the context of a social worker's removal of a child from his home, granted qualified immunity to the social workers.  See id. at 1249-50.  In analyzing qualified immunity in that context, the Tenth Circuit acknowledged that the law regarding the Fourth Amendment's application to the actions of a social worker was not clearly established at that time.  See id. at 1249.  The court in Roska v. Peterson, however, stated that -- as of April 2003, the date of the decision -- "the law is now clearly established that, absent probable cause and a warrant or exigent circumstances, social workers may not enter an individual's home for the purpose of taking a child into protective custody."  Id. at 1250 n.23.

## NEW MEXICO LAW ON CUSTODY

The Defendants cite NMSA § 32A-1-4(N) as giving them authority to seize E.M. and L.M. without a court order.  The Children's Code of New Mexico defines "legal custody" as "a legal status created by the order of the court . . . that vests in a person, department or agency the right to determine where and with whom a child shall live."  NMSA 1978, § 32A-1-4(N)(2003).

The Children's Code sets forth extensive requirements relating to periodic judicial review of treatment plans' implementation and of the safety of children in custody. See NMSA 1978, § 32A-4-25 (1999).   Subsection B of that section describes the review hearings the state court should hold every six months. See id. at § 32A-4-25(B).  Subsection H gives the state court authority to take a variety of actions based upon the findings made at a judicial review hearing, including ordering a change in placement. See id. at § 32A-4-25(H).  In relevant part, that subsection H of 32A-4-25 states:

> H.  Based on its finding at a judicial review hearing held pursuant to Subsection B of this section, the court shall order one of the following dispositions:
>
> * * * *
>
> (6) make additional orders regarding the treatment plan or placement of the child to protect the child's best interests if the court determines the department has failed in implementing any material provision of the treatment plan or abused its discretion in the placement or proposed placement of the child. . . .

NMSA 1978, § 32A-4-25(H)(6) (1999).

Furthermore, the section of the New Mexico Administrative Code which provides for the termination of custody, states:

> CYFD's custody of a child terminates under the following circumstances:
>
> A.     the court dismisses or terminates CYFD's custody of a child;
>
> B.     a voluntary placement agreement expires;
>
> C.     court ordered custody of the child expires;
>
> D.     the child reaches the age of majority; or
>
> E.     a child in CYFD's custody marries or joins the armed forces.

8.10.8.26 NMAC.

The Children's Code contains a series of procedural protections to assure that CYFD does not abuse its authority and that CYFD complies with court orders.  For instance, a Children's Court rule provides for the issuance of an Initial Permanency Order, which may: (1) return the children to their parents; (2) return the children to their parents or guardian subject to various conditions and limitations; or "(3) continu[e] the child in the legal custody of the department with such other disposition as may be in the child's best interest."  NMRA 10-325(E). Moreover, there is to be regular judicial review of the "department's progress in implementing the court's orders."   NMRA 10-325(H).

The published CYFD Policy dealing with legal custody and placement to which a social worker would have turned in early 2000 for guidance on this question provided as follows:

> Custody: Legal custody includes the right to place a child.

> When the Department has legal custody, the court can only order a specific placement when the Department has failed in implementing any material provision in the treatment plan or abused its discretion in the placement or proposed placement of a child.

8.10.7.12.8-8.1 NMAC (2000)(amended 2001).  This published CYFD policy tracks NMSA 1978, § 32A-4-25(H)(6).  Under the Code, the state court may "make additional orders regarding the treatment plan or placement of the children to protect the child's best interests if the court determines that the department has failed in implementing any material provision of the treatment plan or abused its discretion in the placement or proposed placement of the child."  NMSA 1978, § 32A-4-25(H)(6) (1999).  This provision contemplates a judicial review for abuse of discretion either before or after a change of placement by CYFD.  Significantly, there is no provision in the Children's Code, Children's Court Rules, or in CYFD regulations that requires CYFD to obtain a court order to

effectuate a change of physical custody  or of the children's placement.

CYFD's policy, as provided in 8.10.7.11.8.1 NMAC, also reflects established New Mexico case law.  See Vest v. State ex rel. N.M. Human Serv. Dep't, 116 N.M. 708, 716, 866 P.2d 1175, 1183 (Ct. App. 1993)(upholding the Department's decision as to change of placement and corollary denial of the foster parent's opportunity to adopt); In re Jacinta M., 107 N.M. 769, 771, 764 P.2d 1327, 1329 (Ct. App. 1988)(holding that the Children's Code "does not grant the [district] court the power to dictate to the Department where the child should be placed" once the Department has acquired custody).

As the Court discussed in its June 24, 2004 Memorandum Opinion and Order, the Children's Code requires that a Notice of Change of Placement be given to the parties, to the guardian ad litem, the foster parents, the Court-Appointed Special Advocate ("CASA"), and the court.  See NMSA 1978 § 32A-4-14 (1993); Memorandum Opinion and Order at 24-26.  Of significance is the fact that there is no specific procedure for requesting the court to authorize a change of placement or to hear a motion from CYFD requesting permission to change the physical custody of a child.  Section 32A-4-14B references a  request for a hearing filed by a guardian ad litem who objects to a proposed change.  See NMSA 1978 § 32A-4-14(B)(1993).  The statute, however, while it requires a notice, does not otherwise require a hearing  before a change of placement.  It is also important to note that NMSA § 32A-4-14(B) provides for a change of placement by the Department to be delayed only when the guardian ad litem for the children requests a hearing; no such provision is made for requests by foster parents.  The Children's Code, however, does allow interested parties – including foster parents with whom the children have lived for six months – to intervene and to file a motion for affirmative relief.  See NMSA 1978, § 32A-4-27(A)(1999); NMSA 1978 § 32A-4-25(H)(6) (1999);

-15-

NMRA 10-325.

These provisions provide a court with the authority to review CYFD's actions for an abuse of discretion and to issue orders with respect thereto. Under this statutory scheme, however, the burden of objecting to a change of placement is upon any interested party who objects to the change – not on the Department to obtain permission to make a change.

### FOURTH AMENDMENT LAW

The Court discussed relevant Fourth Amendment case law in its Memorandum Opinion and Order. See Memorandum Opinion and Order at 16-18. It was clearly established law on May 25, 2000, that a person is "seized," as the Fourth Amendment uses that term, when a reasonable person would believe that he or she is not free to leave. See Florida v. Bostick, 501 U.S. 429, 435 (1991). It is also clear that the Fourth Amendment prohibits unreasonable seizures. This prohibition, through the Fourteenth Amendment, restricts the states in making unreasonable seizures – seizures without a warrant, court order, or in the absence of exigent circumstances. See Maryland v. Dyson, 527 U.S. 465, 466 (1999); Tennebaum v. Williams, 193 F.3d 581, 605 (2d Cir. 1999)(seizure from school); J.B. v. Washington County, 127 F.3d 919, 928-29 (10th Cir. 1997)(removal from home).

As the Court noted in its June 24, 2005, opinion, in Roska v. Peterson, the Tenth Circuit determined that a social worker's seizure of a child constituted a seizure under the Fourth Amendment and that such a seizure, absent exigent circumstances, required a warrant or court order. See 328 F.3d at 1244. The child in that case, however, was not already in the state's legal custody, nor had any judicial proceedings taken place before the seizure. See id. at 1237-39. Instead, at the time the social worker seized the child, he was in his parents' custody. Thus, the social worker's seizure was unreasonable under the Fourth Amendment absent a warrant, court order, or exigent

-16-

circumstances.

The Defendants contend that the United States District Court for the Eastern District of Virginia has addressed a claim that is more similar to that of E.M.'s and L.M.'s than the claim presented in Roska v. Peterson.  See Gedrich v. Fairfax County Dept. of Family Services, 282 F. Supp. 2d 439 (E.D. Va. 2003).  In Gedrich v. Fairfax County Dept. of Family Services, the court held:

> Plaintiffs fail to state a Fourth Amendment claim against any defendants [during the time the County] had legal custody of [the child] . . . .  On December 14, 2000, [the plaintiff's mother] entered into an agreed order with the County, granting temporary custody of [the child to the] County.  Accordingly, all placements occurring after the December 14, 2000 consent order were made pursuant to [state] law and [Department of Family Services] and its staff were authorized to determine appropriate residential placements, visitation, and medical care for Kara.

282 F. Supp. 2d at 469-70.

## ANALYSIS

## I.   THE COURT WILL EXERCISE ITS DISCRETION AND DECIDE THE DEFENDANTS' MOTION TO RECONSIDER ON ITS MERITS.

As the Defendants concede, the Federal Rules of Civil Procedure do not recognize a motion for reconsideration.  The Defendants, however, seek reconsideration under rule 60(b).  The Defendants concede that they should not use rule 60 as a substitute for an appeal or to address a matter that the Court has already entertained.  The Defendants maintain that they do not seek to have the Court revisit an issue that has already been litigated or that the Court has addressed.  Rather, the Defendants contend that they seek to have the Court address certain dispositive legal issues that the Court tangentially addressed in the Court's denial of the Motion for Summary Judgment.[2]  The

_____

[2] The prior briefing addressed the fact that CYFD had legal custody.  The Court acknowledged this argument in its Memorandum Opinion.  See Memorandum Opinion at 2.  The

Defendants also contend that the Court should address issues which implicate the Court's subject matter jurisdiction.

The Defendants request that the Court reconsider it prior decision either under rule 60(b)(1) or 60(b)(6). A favorable ruling on this motion will be dispositive of all remaining claims in this case. The Defendants submit that the Court's reconsideration will serve the interests of justice.

The Tenth Circuit's decision in Computerized Thermal Imaging, Inc. v. Bloomberg, L.P., unlike the present case, dealt with a dismissal by the district court, not a denial of summary judgment. The Court, therefore, must first consider whether the motion may be considered under rule 59(e) or 60(b) and, if not, if it is within the Court's discretion to decide this motion on the merits.

The Defendants filed this motion more than ten days after the Court entered its Order granting in part and denying in part the Defendants' Motion for Summary Judgment. Rule 59(e), therefore, does not apply.

To determine whether or not the Court should consider the Defendants' motion as a 60(b) motion, the Court must evaluate whether the Court's disposition as to the Fourth Amendment claim was an appealable decision. A denial of summary judgment is ordinarily not a "final judgment" as rule 60(b) contemplates. The Defendants, however, seek reconsideration on the Court's denial of qualified immunity on the Fourth Amendment claim. Because qualified immunity was at issue in the motion for summary judgment, to determine whether this decision was appealable, the Court must evaluate whether its reason for denying qualified immunity on the Fourth Amendment claim was on a factual or purely legal basis. See Mick v. Brewer, 76 F.3d at 1133.

The Court denied the Defendant's qualified immunity on the Fourth Amendment claim on two

_____

Defendants contend that the Court did not fully address the issue.

grounds: (i) there was a genuine issue of material fact whether the Defendants' removal of E.M. and L.M. was conducted pursuant to a court order; and (ii) there was a genuine issue of material fact whether the Defendants acted reasonably in light of clearly established law.  <u>See</u> Memorandum Opinion and Order at 23.  Because both of these grounds were at least partly factual -- as opposed to purely legal -- determinations, the decision is not appealable.  <u>See</u> <u>Johnson v. Jones</u>, 515 U.S. at 319-20.  Because the Court's decision to deny the Defendants qualified immunity on the Fourth Amendment claim was not an appealable decision, and instead constituted an interlocutory decision, the Court cannot consider this motion as a 60(b) motion.

The Court, however, may nevertheless consider this motion under its plenary power as a Court to review and alter all interlocutory decisions.  <u>See</u> Fed R. Civ. P. 54(b)("[A]ny order . . . however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.").  The Defendants' motion is untimely, coming so long after the Court's memorandum opinion and order and so close to trial.  The Court cannot, however, say it is inappropriate.  The Court will therefore exercise its discretion and consider the motion on its merits.

## II.    <u>THE COURT HAS SUBJECT MATTER JURISDICTION OVER THE CASE</u>.

The Defendants challenge the Court's subject matter jurisdiction.   The Defendants contend that the Court's exercise of subject matter jurisdiction would of necessity undermine the state court's determination that removal was not an abuse of discretion.  The Defendants maintain that the <u>Rooker-Feldman</u> doctrine should thus apply.

The Defendants argue that, because the state statute confers legal custody in CYFD, and

-19-

because the Children's Court Judge found that the removal at issue here and subsequent placement were not an abuse of discretion on the Defendants' part, the federal court should not now entertain the Plaintiffs' claims, which are essentially a challenge to that order.   See D.C. Court of Appeals v. Feldman, 460 U.S. 482-86; Rooker v. Fid. Trust Co., 263 U.S. 414-16 (1923).   The Defendants assert that the Rooker-Feldman doctrine should preclude the Plaintiffs from challenging what went unchallenged in state court and which a state court has already upheld.   The Defendants argue that, under this doctrine, the Court should not entertain subject matter jurisdiction.   See Phifer v. City of New York, 289 F.3d 49, 55-57 (2d Cir. 2002)(holding that the Rooker-Feldman doctrine precludes federal courts from hearing claims that attack  decisions concerning custody, neglect, and visitation).

        In this case, the Court is not being asked to review a state court's decision.  Whether the 1998 state court decision is valid, or whether CYFD had legal custody, is not in dispute in this case.[3]

_____

        [3] This case is distinguishable from the Tenth Circuit's recent decision in Kanth v. Lubeck, No. 04-4080, 2005 WL 388734 (10th Cir. Feb. 18, 2005)(unpublished decision).   The plaintiff in Kanth v. Lubeck alleged that state court divorce proceedings deprived him of his constitutional rights and "requested the federal court to assume jurisdiction over the state divorce proceedings, to dismiss the [state] divorce decree, and restore to him full custodial and visitation rights to his two minor children."  Id. at *1.  The district court dismissed the plaintiff's "complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction, concluding that the Rooker-Feldman doctrine bars him from challenging the orders and judgments entered in the state-court proceedings."  Id.  In affirming the district court's dismissal, the Tenth Circuit examined whether  "the state court judgment caused, actually and proximately, the injury for which the federal court plaintiff seeks redress."  Id. (quoting Kenmen Eng'g v. City of Union, 314 F.3d at 476).  Concluding that the relief sought by the plaintiff "is a reversal of the . . . state courts' rulings against him and an award of custodial and visitation rights to his children," the Tenth Circuit held that "[a]ny federal claims are inextricably intertwined with those orders."  Kanth v. Lubeck, 2005 WL 388734, at *1.  In this case, however, the injury of which the Plaintiffs complain does not arise out of any state court order or proceeding.  To the contrary, establishing the Fourth Amendment violations hinges on the lack of a court order or other authority allowing the Defendants to change E.M.'s and L.M.'s placement. Because the injury does not stem from the state court proceedings, and the parties do not ask the Court to act as an appellate court for the state court judgment, the Rooker-Feldman doctrine does not apply.

Instead, the Court must examine whether, after the 1998 state court order placing E.M. and L.M. in CYFD's custody, it was necessary for CYFD to receive another court order before changing the children's placement.  Insofar as the June 24, 2000 state court order, the Plaintiffs contend that, under the Fourth Amendment, the social workers required another court order before changing placement. What the state court determined in its June 24, 2000, order is, therefore, irrelevant to that analysis.

Thus, the Court has subject matter jurisdiction over the Plaintiffs' claims because the parties are not attempting to use this Court to review an earlier state court order or decision.

## III.   THE COURT WILL GRANT THE DEFENDANTS SUMMARY JUDGMENT ON THE FOURTH AMENDMENT CLAIM.

The Defendants contend that they are entitled to qualified immunity on the remaining Fourth Amendment claims.  After reconsidering this issue, the Court finds that the Defendants did not violate E.M.'s and L.M.'s Fourth Amendment rights because CYFD had legal custody at the time the Defendants removed the children from daycare and changed their placement.  Accordingly, the Plaintiffs have not established a violation of a constitutional right, and the Defendants are entitled to qualified immunity.  Even assuming a constitutional violation occurred, however, the Defendants are nonetheless entitled to qualified immunity because the law is not clearly established in this area.  Thus, the Defendants are entitled to summary judgment on the Fourth Amendment claim on the basis of qualified immunity.

### A.   THERE WAS NO FOURTH AMENDMENT VIOLATION BECAUSE CYFD HAD LEGAL CUSTODY OF THE CHILDREN AT THE TIME THE CHANGE IN PLACEMENT OCCURRED.

In their motion, the Defendants assert that they are entitled to summary judgment on E.M.'s and L.M.'s Fourth Amendment claims because CYFD had legal custody of the children at the time

-21-

the Defendants removed them from the day care center and placed them in treatment foster care. The Defendants contend that this status gave CYFD the authority to determine where the children should live and to make changes in their placement as CYFD determined to be appropriate. Specifically, the Defendants contend that legal custody gave CYFD the authority to effectuate a change in placement of the physical custody of E.M. and L.M. without a court order. The Defendants thus contend that the May 25, 2000, change of placement was not an unlawful seizure under the Fourth Amendment, but was a valid exercise of authority under the August 13, 1998 Order.

The only seizure under the Fourth Amendment occurred in 1998 when they removed the children from their biological parents' "legal custody" and placed them in CYFD's "legal custody." Under the New Mexico Children's Code, once a court has conducted a Custody Hearing and awarded CYFD legal custody of a child, CYFD has the authority and obligation, subject to judicial review for abuse of discretion, to make various decisions regarding the child's care, including determining where and with whom the child shall reside. Because CYFD had legal custody of E.M. and L.M., it had authority to determine where and with whom they would reside. The Defendants did not need any further court order to make such decisions. The Defendants change of E.M.'s and L.M.'s physical custody, when they picked them up at day care on May 25, 2000, did not implicate their Fourth Amendment rights.

The Plaintiffs make no allegation that the New Mexico Children's Code is unconstitutional. See Transcript of Hearing at 72:7-10 (May 18, 2004).[4] Under the Children's Code, the guardian ad litem, foster parent (Hunt), or other interested party could have filed a motion seeking to stay the

_____

[4] At the November 8, 2004, hearing, the Court and the Defendants discussed that the Plaintiffs were not challenging the constitutionality of the statutory scheme. See Transcript of Hearing at 11:8-12; 36:17-20. The Plaintiffs did not object to this characterization of their claim.

change of placement, of if it had occurred, to reverse it.  Any of these individuals could also have raised an objection to the change at the judicial review hearing held on July 24, 2000.  Moreover, as indicated above, state law authorized the Children's Court to change placement if the court determined that the Department had abused its discretion in placement.  Nevertheless, because CYFD had legal custody at the time the change in placement occurred, state law did not require the Defendants to seek an additional court order -- or wait for the state court to issue an order changing placement based on abuse of discretion -- before changing E.M.'s and L.M.'s placement.

The situation in Roska v. Peterson was different than that present at the time the Department removed E.M. and L.M. from their day care.  In Roska v. Peterson, the child's seizure was comparable to E.M.'s and L.M.'s seizure by CYFD in 1998 when CYFD took custody of E.M. and L.M.  In this case, the abuse and neglect investigation began in June 1998, and at that time, E.M. and L.M. were placed in Hunt's custody with the consent of their biological parents.  The August 1998 seizure of E.M. and L.M. was lawful and pursuant to a court order.

In contrast to Roska v. Peterson, therefore, E.M. and L.M. were already in the legal custody of CYFD on May 25, 2000, when they were taken from their daycare and put into the physical custody of another family.  New Mexico law defines legal custody as including the right to decide "where and with whom a child shall live . . . ."  NMSA 1978, § 32A-1-4(N).  The Court concludes, therefore, that Roska v. Peterson does not support the position that the Defendants violated E.M.'s and L.M.'s Fourth Amendment constitutional rights.

New Mexico's legislation, executive branch, and courts have left CYFD and its social workers with flexibility to move children within its system once it has legal custody over the children.  Once it has legal custody, CYFD has the ability to respond to changes in physical custody without a court

order.  For the Court to require, under the Fourth Amendment, a warrant or court order to change physical custody would be to largely erase the distinction between legal and physical custody.  There are good reasons to require a warrant or court order when, as in <u>Roska v. Peterson</u>, the state is removing children from parents or others who have legal custody.  There is no such compelling reason for judicial action where the state is changing foster parents or physical guardians.  Moreover, there are valid reasons, which New Mexico has recognized, to leave its social workers with flexibility once it has obtained legal custody over the children.[5]

---

[5] Despite the lack of case law discussing the constitutional implications of a state changing the placement of children in the state's legal custody, there is a substantial amount of cases discussing the constitutional rights of state and federal prisoners.  In <u>Meachum v. Fano</u>, 427 U.S. 215 (1976), the Supreme Court for the United States held that

> the Due Process Clause in and of itself [does not] protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.

<u>Id.</u> at 225.  <u>Accord</u> <u>Olim v. Wakinekona</u>, 461 U.S. 238, 244 (1983)("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State.").  Most cases discussing prisoners' Fourth Amendment challenges address searches and seizures of the prisoner's cell.  <u>See</u> <u>Hudson v. Palmer</u>, 468 U.S. 517, 530 (1984)(holding "that prisoners have no legitimate expectation of privacy and that the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells . . . .");  <u>Christopher v. Gomez</u>, No. 94-17175, 1995 WL 566050, at **2 (9th Cir. Sept. 25, 1995)(unpublished decision)(affirming the district court's dismissal of a prisoner's Fourth Amendment claim "because a state prisoner has no reasonable expectation of privacy in his cell entitling him to Fourth Amendment protection against unreasonable searches and seizures").  The Court of Appeals for the Ninth Circuit, however, addressed a prisoner's allegation that his transfer to a different state prison violated his Fourth Amendment rights.  <u>See</u> <u>Rizzo v. Dawson</u>, 778 F.2d 527, 529-30 (9th Cir. 1985).  The Ninth Circuit held that the prisoner's "fourth amendment . . . [claim was] properly dismissed as frivolous because [it] lacked substance in law and fact."  <u>Id.</u> at 529.

Although the situation between legal custody of a child and of a prisoner contains stark differences, this case law is instructive on the restriction of a person's constitutional rights while in the state's or federal government's legal custody.  Just as a prisoner cannot allege a constitutional violation solely based on the transfer from one prison to another, a child in the state's legal custody

The Plaintiffs, however, contend that it can be reasonably inferred from the undisputed facts already asserted in the case that the Children's Court, by ordering S.M.'s removal, determined that the department "abused its discretion in the placement" of S.M.  The Plaintiffs contend that it is also reasonable to infer that the Children's Court, by ordering the Defendants to "investigate" E.M.'s and L.M.'s removal, put the Defendants on notice that the state court was contemplating, but not yet issuing, an order changing E.M.'s and L.M.'s placement.  The Plaintiffs contend that the directive to investigate put the Defendants on notice that the state court itself was contemplating a further state court order to effectuate a change in E.M.'s and L.M.'s placement by the Defendants.

The Court does not find that these allegations by the Plaintiffs are in error; to the contrary, it is reasonable from the record to conclude that, after the May 11th hearing, the Defendants were on notice that if they did not change E.M.'s and L.M.'s placement, the Children's Court would find the Defendants abused their discretion and order a change in placement.  The Court, however, does not agree that the Defendants had to wait for the Children's Court to enter such an order before changing E.M.'s and L.M.'s placement.  CYFD had legal custody of E.M. and L.M. in May, 2000, and, therefore, the Defendants' removal of the children from daycare did not violate their rights to the Fourth Amendment.

### B.   EVEN ASSUMING A CONSTITUTIONAL VIOLATION, THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE FOURTH AMENDMENT CLAIMS BECAUSE THE LAW IS NOT CLEARLY ESTABLISHED.

The Court agrees with the decision from the Eastern District of Virginia, Gedrich v. Fairfax County Dept. of Family Services, which held that, when the child was in the County's legal custody,

---

cannot alleged a constitutional violation based on a change in placement.

there were no Fourth Amendment violations arising out of the child's change in placement. As expressed above, the Court agrees that, by virtue of being in CYFD's legal custody, no Fourth Amendment violation occurred. Regardless, even if it is found that, despite CYFD's legal custody, the change in placement was a violation of the Fourth Amendment, the law on this issue is not clearly established and, therefore, the Defendants are entitled to qualified immunity.

As noted above, the <u>Roska v. Peterson</u> case does not control because, in that case, the child was still in the legal custody of his parents at the time the defendants seized the child from his parent's home without a warrant or court order. In this case, CYFD already had legal custody of the children at the time of the change in their placement. The parties and the Court could not find a case from the Tenth Circuit, other Circuits, or the Supreme Court addressing this issue.

The Defendants submit that the relevant inquiry is whether, in light of clearly established law and the information that they possessed, an objectively reasonable social worker in their shoes would have been on notice that removing the two older children without another court order would violate their Fourth Amendment rights. The Defendants submit that they are entitled to qualified immunity for their actions, which occurred three years before the <u>Roska v. Peterson</u> decision was issued. Because there is no controlling case on point -- either at the time the change in placement occurred or at the time this opinion is issued -- the law is not clearly established on this issue, entitling the Defendants to qualified immunity on the Fourth Amendment claim.

In sum, in exercising this Court's discretion to review its interlocutory decision, the Court amends its earlier judgment and enters summary judgment in favor of the Defendants on the Fourth Amendment claim on the basis of qualified immunity.

**IT IS ORDERED** that the Defendants' motion is granted in part and denied in part. The

Court will deny the motion to the extent it is a motion under rule 60(b) of the Federal Rules of Civil Procedure.  The Court, however, has reconsidered its prior order under rule 54(b) and its inherent authority to reconsider interlocutory orders.  The Defendants' Motion for Summary Judgment on the Fourth Amendment claims is granted and is dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Jeff Romero
Albuquerque, New Mexico

     *Attorney for the Plaintiffs*

Elizabeth L. German
Daniel J. Macke
Brown & German
Albuquerque, New Mexico

     *Attorneys for the Defendants*